Whitaker, Judge,
delivered the opinion of the court:
This is a suit for the cost of doing work which plaintiff says was in addition to that called for by the plans and specifications.
On June 8, 1938 the Bureau of Yards and Docks of the Navy Department advertised for bids for the construction of an embankment behind a rifle range butt at the Naval Academy at Annapolis, Maryland, in accordance with the specifications and drawings attached thereto. The drawings called for an embankment ±48.00 feet high, and on a slope 10 feet horizontal to 12 vertical, but it was stated that “these dimensions vary to suit elevation of existing ground.”
The specifications attached to the invitation for bids stated that “approximately $2,500 is available for the work and the quantity of filling which will be done is dependent upon the unit price for the work.”
It was also stated that “The work shall be located at the Naval Academy (Rifle Range), Annapolis, Maryland, approximately as shown. The exact location will be indicated by the officer in charge.” The proof shows that if the embankment was built at the site shown that about 9,000 yards of earth would be required to erect the embankment according to the dimensions shown on the plans, assuming it was erected to a height of 48 feet; but the proof also shows that the tentative site was fairly close to a creek and that if the site finally determined upon was immediately adjacent to this creek that considerably more earth would be required than if it was erected on the site shown.
The proof also shows that the designation “±48.00 feet” means 48 feet, more or less. This is testified to by Commodore Bissett, who had a doctor’s degree in engineering and who was in charge of the work for the Navy Department. Plaintiff disputes this. On his original examination he testi *474 fied that “±48.00” means exactly 48 feet, with variation permitted only in the last decimal place. In other words, he says the embankment had to be erected at no greater height than 48.09 feet, and at no less height than 48.00 feet. However, in rebuttal he testified:
Q. Strictly speaking, from such common practice among engineers, what is the actual significance of the term “elevation ±48.00”?
A. It means that the elevation could vary from 48 feet below datum, which would mean 48 feet below mean low water, to 48 feet above.
Q. Do you mean, then, that there would in effect be a permissible variation of 96 feet in elevation with .48 feet below and 48 feet above the elevation in question?
A. Yes, that is what the statement on the drawing means and it further means that it could not be below 48 feet-
Q. Could-not be more than 48 feet below or more than 48 feet above ?
A. That is right.
Such a construction, obviously, is absurd. It could not have been intended to erect an embankment either at 48 feet above sea level or one 48 feet below.- The latter would probably have been a ditch. What plaintiff had in mind in offering such testimony we cannot imagine:
Commodore Bissett’s testimony that “±48.00 feet” means plus or minus 48.00 feet, or approximately 48 feet, is to us convincing. It would mean this to a layman and the only reasonable testimony in the record is that it would mean this to an engineer. Especially is this so since the specifications said that “the quantity of filling which will be done is dependent upon the unit price for the work.”
It results, therefore- that the Government requested bids on the building of an embankment of an indefinite height, but approximately 48 feet, with the understanding that only $2,500 was available for the work and that “the quantity of filling which will be done is dependent upon the unit price for the work.”
Plaintiff'decided to put in a bid and did so at 20 cents per cubic yard, but with the condition “that not less than $2,500 will be paid.” The defendant accepted plaintiff’s bid of 20 cents per cubic yard, but on the condition that “the work *475 under this contract- contemplates the expenditure of approximately $2,500.” When the contract was drawn this was the condition inserted therein; that is to say, “the work under this contract contemplates the expenditure of approximately $2,500.00.”
Now plaintiff says that his bid-was for $2,500.00 to construct an embankment exactly 48 feet high on a slope 10 feet horizontal to 12 feet vertical, arid that the earth necessary to construct such an embankment amounted to some seven or eight thousand cubic yards, and that, inasmuch as he was required to place in the embankment thirteen or fourteen thousand cubic yards, he is entitled to recover the cost of placing therein this alleged excess material.
Neither the language of the contract and plans and specifications nor the circumstances surrounding the transaction sustain plaintiff’s position. Plaintiff offered and agreed on a unit price of 20 cents a cubic yard. If by the condition attached to his bid, “that not less than $2,500 will be paid,” he intended to stipulate that he would be paid $2,500 for building an embankment exactly as shown on the plans, then this part of his bid would have been in contradiction with his bid of 20 cents a cubic yard, because even at 9,000 yards, which was the largest estimate of the amount of earth required to .erect the embankment exactly as shown, there would have been due, at 20 cents a cubic yard, only $1,800.
The testimony shows that plaintiff attached this condition to his bid because he thought it would be unprofitable to move the necessary machinery and equipment to the job if only 9,000 yards of earth were to be placed in the embankment. He, therefore, attached the condition that the Government should spend not less than $2,500; but this is to be taken, of course, in connection with his bid of 20 cents, a cubic yard. The condition, therefore, meant that the Government would erect an embankment containing enough yardage which at 20 cents a cubic yard would amount to $2,500, or, if it did not do so, it would pay the $2,500.00 anyway.
The testimony shows that this is the way the defendant’s agents understood plaintiff’s bid, and that this is what they meant when they included in the contract the provision, “The *476 work under this contract contemplates the expenditure of approximately $2,500.”
They believed that they had the right to vary the plans enough to do this because they called for an elevation of ±48.00 feet, and because bidders were put on notice that “Approximately $2,500 is available for the work and the quantity of filling which will be done is dependent upon the unit price for the work.” Accordingly, when plaintiff was ready to begin filling, defendant, at the same time it gave plaintiff notice to proceed, wrote plaintiff as follows:
A restudy has been made of the amount of fill to be deposited in the embankment' to be constructed under your contract, in order to use the entire amount of money, allotted for the project, and it is found that the embankment may be raised approximately 7 feet, or so that the top of the embankment will be approximately elevation 55.00. It is desired that you proceed with the filling on this basis. [Italics ours.]
Plaintiff replied, protesting against the slope of the embankment and urging the adoption of a slope of 5 vertical to 6 horozontal, or even one of 5 vertical to 7 horizontal. He concluded his letter as follows:
I am willing to bring the top of the new embankment to elevation plus 50, with the available yardage, the slope to be at my discretion, but not greater than 5: 6, which is 88 percent. My personal opinion is that this slope is too steep to withstand the action of rain, sand, frost and bullets ; that the embankment constructed to elevation plus 48, at a slope of 5:7, or 71.5 percent, would be more stable as is demonstrated by the existing embankments.
The following day the contracting officer wrote plaintiff agreeing to construction to plus 50, with slide slopes of 5 vertical to 6 horizontal, saying “there will be enough money under the allotment at the contract price to construct the new embankment as described above.” This statement of course was made, having in mind the statement in the invitation for bids, that “approximately $2,500 is available for the work and the quantity of filling which will be done is dependent upon the unit price for the work,” and having also in mind the fact that plaintiff had bid 20 cents a cubic yard.
Plaintiff went ahead with the work on this basis without *477 saying anything at all about wanting additional compensation. If he had said anything about wanting more than $2,500 for placing 12,500 yards, we have no doubt he would have been told then and there that no extra compensation was payable, and we are quite sure that plaintiff knew this.
Plaintiff actually placed in the embankment more than 12,500 cubic yards; he placed therein 13,776 cubic yards, for which he has been paid at the rate of 20 cents a cubic yard. This is all he is entitled to.
Plaintiff’s petition will be dismissed. It is so ordered.
Madden, Judge; Jones, Judge; and Littleton, Judge; concur.
Whalev, Chief Justice, took no part in the decision of this case.